UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANTHONY F. H., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 20-CV-662-CDL |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision denying benefits.

**I.    Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill,* __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62). So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.  Procedural History

Plaintiff filed an application for Social Security disability insurance benefits on June 20, 2018. (R. 155). Plaintiff alleges he is disabled due to asthma, high blood pressure, headaches, and injuries to his shoulders, back and knees. (R. 172). Plaintiff was 52 years old on the alleged disability onset date of January 2, 2015. (R. 155). Prior to the onset date, Plaintiff worked as a rehabilitation training specialist for mentally and physically

disabled patients and as a truck driver. (R. 174). The Commissioner denied Plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a hearing on November 18, 2019, at which Plaintiff was represented by counsel. (R. 10). A Vocational Expert (VE) also testified at the hearing. *Id.* On February 24, 2020, the ALJ issued a decision denying disability benefits. (R. 10-20). On October 19, 2020, the Appeals Council denied Plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1). Accordingly, the Court has jurisdiction to review the ALJ's February 24, 2020 decision under 42 U.S.C. § 405(g).

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

### A. Step One

The ALJ found that Plaintiff is insured through December 31, 2017 and that he has not engaged in substantial gainful activity (SGA) since his alleged disability onset date of January 2, 2015. (R. 12).

### B. Step Two

The ALJ determined that Plaintiff has the following severe impairments: status post left shoulder arthroscopy with debridement of partial biceps tendon tear, debridement of rotator cuff tear, and sub acromial bursectomy. *Id.* The ALJ found Plaintiff's impairments of obesity, asthma, and high blood pressure were non-severe. (R. 13). The ALJ found that Plaintiff also has non-medical determinable impairments of headaches, back injury, right shoulder injury, and knee injuries. *Id.* The ALJ found no medical evidence in the record to establish that Plaintiff's headaches were diagnosed as a medically determinable impairment under the new SSR 19-4p rules for evaluation of headaches. *Id.* In addition, the ALJ found that there is no evidence of treatment for Plaintiff's back injury, right shoulder injury, and knee injuries from his alleged onset date until his date of last insured on December 31, 2017. *Id.*

### C. Step Three

The ALJ determined that Plaintiff's impairments, considered singly or in combination, do not meet or medically equal the criteria of a Listing, specifically noting Listings 1.00 (musculoskeletal system) and 3.00 (respiratory disorders). *Id.*

The ALJ considered Plaintiff's obesity in her assessment of the Listings, according to the criteria set forth in Social Security Ruling (SSR) 19-2p. (R. 12-13). In accordance with these findings, the ALJ proceeded to step four.

### D. Step Four

The ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work as follows:

> [Plaintiff can] lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit for six hours in an 8-hour workday with normal breaks. He can stand and/or walk six-hours in an 8-hour workday with normal breaks. He can left overhead reach occasionally.

(R. 14). Plaintiff's past relevant work includes work as a home attendant (performed at the very heavy exertion level, with specific vocational preparation (SVP) level 3, Dictionary of Occupational Titles (DOT) # 354.377-014) and heavy truck driver (performed at the very heavy exertion level, with SVP of 4. DOT # 905.663-014). (R. 18). The ALJ found that Plaintiff is unable to perform his past work as a rehabilitation training specialist or over the road truck driver. *Id.* Accordingly, the ALJ proceeded to step five.

  **E. Step Five**

Citing the VE's testimony as to a hypothetical person with Plaintiff's RFC, age, education, and work experience, the ALJ found that Plaintiff can perform the requirements of the following representative occupations:

> **Marker,** light exertion, SVP level 2, DOT # 209.587-034, with 335,334 jobs existing in the national economy;
>
> **Routing clerk,** light exertion, SVP level 2, DOT # 222.687-022, with 39,882 jobs in the national economy;
>
> **Router,** light exertion, SVP level 2, DOT # 222.587-038, with 53,292 jobs in the national economy.

(R. 19). Accordingly, the ALJ concluded at step five that Plaintiff was not disabled through December 31, 2017, the date of last insured. (R. 20).

**IV. Discussion**

Plaintiff asserts two points of error in the ALJ's decision. First, Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because she failed to adequately develop the record. Second, Plaintiff argues that the ALJ failed to meet the Commissioner's burden at step five. The Commissioner argues that the ALJ's findings at step four and step five are supported by substantial evidence and free of reversible legal error.

### A. RFC

#### i. The ALJ's Decision

In determining Plaintiff's RFC, the ALJ considered Plaintiff's medical treatment records from Tulsa Bone & Joint Associates dated July 8, 2015 through April 6, 2016 detailing the treatment of Plaintiff's left shoulder, records from Morton Comprehensive Health Care (Morton), prior administrative findings, Plaintiff's statements from his Adult Function Report, and Plaintiff's hearing testimony. The ALJ discussed the records of Kevin Dukes, M.D. with Tulsa Bone & Joint Associates dated July 8, 2015 where the examination revealed Plaintiff "was well developed and well nourished," he had "normal gait and station," and "atrophy at the supraspinatus and infraspinatus fossa." (R. 15 (citing Exhibit 1F)). The examination also showed Plaintiff "was weak with any sort of resistive testing of the rotor [sic] cuff but no Acromioclavicular (AC) tenderness was exhibited." *Id*. The ALJ also noted that the "MRI report showed biceps dislocation medially, loose bodies that appeared to be intra-articular, and rotator cuffs [sic] tear." *Id*.

Plaintiff's x-rays showed "radiopacity consistent with loose bodies in the joint and a high-riding humeral head." *Id*. Dr. Dukes assessed Plaintiff with "cervical pain, left shoulder pain, left rotator cuff tear, and left loose body in joint" and recommended that Plaintiff undergo shoulder surgery. *Id*. (citing *id*. at 1-4 and duplicated at Exhibit 5F). The ALJ noted that "[o]n January 15, 2016, the [Plaintiff] underwent a left shoulder arthroscopy with debridement of partial biceps tendon tear, debridement of the rotator cuff tear, and sub acromial bursectomy." *Id*.

The ALJ also discussed Plaintiff's post-surgery follow up appointments and physical therapy records. At the January 27, 2016 follow up appointment with Dr. Dukes, the physical examination showed "there was no erythema, warmth, or sign of infection" and Plaintiff "was also neurologically intact." (R. 16). The Plaintiff had a follow up appointment with Dr. Dukes on February 24, 2016, where the examination showed he "was able to lift his arm up with some difficulty and some discomfort," but "there was no erythema, warmth or signs of infection." *Id*. Dr. Dukes reported "he had some serious concerns whether [Plaintiff] was going to be able to return to his normal work and he might need to be retrained." *Id*. At his last physical therapy appointment on March 24, 2016, the Plaintiff reported "he was doing well but reported pain at the elbow." *Id*. On examination, "his left shoulder was 80 degrees with flexion and he had decreased muscle strength with flexion, extension, abduction, adduction, and shoulder internal/external rotation." *Id*. The examination also revealed Plaintiff "had decreased strength in his left elbow flexion and extension," and he reported "he sometimes had tingling in his hands." *Id*. Plaintiff's physical therapy assessment was "shoulder strength and functional range of motion was improving but his left elbow extension remained weak and with difficulty," and his "pain level was much improved." *Id*.

At his last follow up appointment with Dr. Dukes on April 6, 2016, Plaintiff reported "some elbow pain that started around the time of the accident and he noticed some occasional numbness and tingling in his finger." *Id*. Dr. Dukes "felt it was safe to say that [Plaintiff] was not going to be able to do any type of heavy lifting particularly overhead," he "did not think [Plaintiff] could return to work, which he had to deal with large aggressive

8

children," he "was going to recommend that [Plaintiff] seek some type of vocational retraining," and he "felt [Plaintiff] had reached his maximum medical improvement." *Id*. (citing Exhibit 1F/15-28 and duplicated at Exhibit 5F).

The ALJ noted that the only medical treatment Plaintiff sought after his April 6, 2016 post-surgery appointment was at Morton. (R. 17 (citing Exhibit 2F/1-4)). On February 20, 2017, Plaintiff sought treatment "for complaints of shortness of breath, coughing for one week, and yellow phlegm but there was not any mention of problems with his shoulders and numbness/tingling in his hands." *Id*. At Plaintiff's two other visits to Morton on May 15, 2017 and June 15, 2017 for high blood pressure treatment, there was no "mention of any problems with his shoulders and numbness/tingling in his hands," or any "objective evidence for his severe impairment." *Id*.

The ALJ noted the Adult Function Report, where Plaintiff reported "he was able to drive a car, do laundry, vacuum, iron, and prepare his own meals." (R. 18 (citing Exhibit 3E/7)). The ALJ also cited Plaintiff's hearing testimony that "he was able to carry his own bags up the stairs" and "[h]e described the weight of the bag as 'light.'" *Id*. The ALJ also reviewed the prior administrative medical findings of state agency physicians Sean Neely, D.O. and Larry Ressler, M.D., both of whom found "there was insufficient evidence to establish the severity of the allegation on or before the DLI [date of last insured]." *Id.* (citing Exhibits 2A, 4A). The ALJ found their opinions were not persuasive because "they did not personally examine the [Plaintiff] nor did they have any diagnostic studies performed." *Id.*

The ALJ's decision explained that

> a review of the medical evidence reveals the claimant has a history of a left shoulder injury, non-compliance with medication, and inconsistencies between his subjective complaints an [sic] objective medical evidence. The record reveals in spite of his status post left shoulder arthroscopy with debridement of partial biceps tendon tear, debridement of rotator cuff tear, and sub acromial bursectomy; he retains the ability to complete substantial gainful activity on a sustained basis as outlined in the RFC in this decision.

(R. 15). In light of the foregoing evidence, the ALJ determined that the RFC is reasonable and Plaintiff retains the ability to perform light work with only occasional reaching overhead with his left arm.

### ii.     Plaintiff's Arguments

The Plaintiff argues that the ALJ's RFC findings are deficient because the ALJ failed to adequately develop the record. Specifically, Plaintiff asserts the ALJ failed to ask sufficient questions at the administrative hearing and failed to order a post-hearing consultative examination. "The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). The administrative hearing is nonadversarial, but the ALJ is responsible for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). "The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'"

*Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (quoting *Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 479–80 (10th Cir. 1993)).

### *ALJ's Failure to Ask Questions*

At the hearing, the ALJ asked Plaintiff about his personal history and background and his shoulder injuries and subsequent surgeries that were the basis of his Workers' Compensation case before turning the questioning over to Plaintiff's counsel. (*See* R. 28-33). Plaintiff's counsel then thoroughly questioned Plaintiff about his past work, injuries, medical treatment, functional limitations, and activities of daily living. (*See* R. 33-49). Plaintiff's counsel then advised the ALJ "I have no further questions." (R. 47). The questioning by Plaintiff's counsel prompted the ALJ to ask Plaintiff some follow-up questions about Plaintiff's activities of daily living. (*See* R. 47-48). Plaintiff testified that he does his own grocery shopping, and he carries his bags up and down the stairs to his apartment on the second floor. (*See* R. 48). Plaintiff's counsel asked his own follow-up questions where Plaintiff testified that the grocery bags are "light" and he only carries "[o]ne, sometime [sic] two." *Id.* Plaintiff's counsel again advised the ALJ "I have no further questions." (R. 49). Plaintiff now claims the ALJ did not conduct an adequate hearing and that the ALJ denied his claim based on the "absence of evidence." (*See* Pl.'s Br., Doc. 12 at 6-7). The Court finds that Plaintiff's arguments have no merit.

An ALJ is not required to "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." *Hawkins*, 113 F.3d at 1168. Here, the ALJ gave Plaintiff's counsel and Plaintiff every opportunity to present their case at the hearing, and Plaintiff's counsel

thoroughly questioned Plaintiff about his medical and functional impairments before advising the ALJ he had nothing further to add. (*See* R. 57). Where a Plaintiff is represented by counsel at the hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167. Here, the ALJ reasonably relied on statements from Plaintiff's counsel that the record was complete, and no further questions were necessary.

Further, Plaintiff's argument that the ALJ relied on the absence of evidence to deny his disability claim is without merit. As set forth *supra* Part IV.A.1, the ALJ adequately addressed the evidence relating to Plaintiff's left shoulder impairments and related functional limitations. Thus, the ALJ's decision reflects a reasonable determination that the record contained adequate information to decide Plaintiff's claim. The Court finds that the ALJ did not err in failing to ask more questions, because the existing record contained adequate information for her to render a decision on the Plaintiff's disability claim.

### *ALJ's Failure to Order a Consultative Examination*

Plaintiff argues that the "medical record is replete with substantial evidence of a severe injury to his left shoulder," and that records from Dr. Dukes "indicate a number of impairments that affect his Activities of Daily Living" which should have prompted the ALJ to further investigate the extent of those impairments. (*See* Pl.'s Br., Doc. 12 at 4). Specifically, Plaintiff asserts that the existing record clearly shows that he has left shoulder impairments, including weakness, difficulty reaching, lifting, and using his left hand;

therefore, a consultative examination is needed to ascertain the limiting effects from those impairments. *Id.* at 8.  Here, the ALJ considered the opinion from Dr. Dukes that "the [Plaintiff] was not going to be able to do any type of heavy lifting-particularly overhead," he "did not think [Plaintiff] could return to work," and he "recommended the [Plaintiff] seek some type of vocational retraining." (R. 18).  The ALJ found Dr. Dukes' opinion only partially persuasive because Dr. Dukes "did not use vocational defined terms nor did he define what was meant with 'heavy lifting.'" *Id*.  Plaintiff argues the ALJ should have requested clarification from Dr. Dukes about what he meant by the term heavy lifting and ordered a post-hearing consultative examination to determine how much the Plaintiff could lift.

"The Secretary has broad latitude in ordering consultative examinations." *Hawkins*, 113 F.3d at 1166 (quoting *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)).  In *Hawkins*, the Tenth Circuit identified instances when a consultative examination is often required, such as "where there is a direct conflict in the medical evidence requiring resolution," "where the medical evidence in the record is inconclusive," and "where additional tests are required to explain a diagnosis already contained in the record." *Id*. at 1166; *see also* 20 C.F.R. § 404.1519a(b).  Further, in cases where the Plaintiff was represented by counsel at the hearing, "the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development," and "[i]n the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Hawkins*, 113 F.3d at 1167-68.

Plaintiff's counsel states that he did not ask for a post-hearing consultative examination, because he had no idea that the ALJ "would rely on the 'vocational defined terms' defense to deny benefits." (*See* Pl.'s Br., Doc. 12 at 7). While the ALJ noted that Dr. Dukes did not use vocationally defined terms, she nevertheless agreed with Dr. Dukes that Plaintiff could not return to his previous work requiring heavy lifting, particularly overhead.[2] Importantly, Dr. Dukes opined that Plaintiff could not return to his previous work, but he did not preclude Plaintiff's return to all types of work. This is evident by Dr. Dukes' recommendation that Plaintiff receive vocational retraining. (*See* R. 261, 265). Consistent with Dr. Dukes' opinion, the ALJ assessed an RFC for light work with an additional left overhead reaching restriction.

Plaintiff has not identified any direct conflict in the medical record with the ALJ's RFC determination. Additionally, as set forth *supra*, the record contained adequate information to decide Plaintiff's claim and is supported by substantial evidence. The Court cannot reverse a determination by the ALJ that is supported by substantial evidence—such as here—based on mere speculation, and without any identifiable deficiency in the existing record. *See Hawkins*, 113 F.3d at 1167. Therefore, the ALJ's duty to further develop the record by ordering a consultative examination was not warranted, and there was no reversible error in the ALJ's failure to order a consultative examination.

---

[2] The Commissioner's regulations define heavy work as "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d).

**B.     Step Five**

Plaintiff argues that the ALJ failed to meet the Commissioner's burden at step five that Plaintiff can perform the representative occupations identified by the VE. Based on the hypothetical scenario of a person with Plaintiff's RFC, age, education, and work experience, the VE found that Plaintiff could perform the requirements of a marker, routing clerk, and router. (*See* R. 52-53). The VE testified that all three occupations require frequent use of the hands; therefore, a person limited to only occasional use of the hands would be unable to perform said occupations. (*See* R. 54-55). Plaintiff argues that the ALJ failed to properly weigh the medical evidence and favorable testimony from the VE that supports Plaintiff's position that he has only occasional use of his hands. In support of his claim, Plaintiff cites where Dr. Dukes found his "hand and arm use were impaired as to reaching, turning hands or arm, twisting hands or arms and fine hand use." (*See* Pl.'s Br., Doc. 12 at 10 (citing R. 262)). Plaintiff further contends that Dr. Dukes' finding that "shows some functional improvement, but remains very limited is more in line with [o]ccasional use of the hands." *Id.*

However, the aforementioned statements cited in Plaintiff's brief were incorrectly attributed to Dr. Dukes and are actually subjective reports of functional limitations that were made by Plaintiff at physical therapy. (*See* R. 262). Likewise, the paragraph in Plaintiff's brief listing various functional limitations are Plaintiff's subjective reports from the same physical therapy progress note and incorrectly attributed to Dr. Dukes. (*See* Pl.'s Br., Doc. 12 at 9 (citing R. 262)). Plaintiff cites the February 24, 2016 progress note where Dr. Dukes noted "[Plaintiff] is able to lift his arm [left] up with some difficulty and some

discomfort." *Id.* (citing R. 260).  The Court notes that the February 24, 2016 progress note also stated that Plaintiff "is approximately one month status post left shoulder arthroscopy for irreparable massive rotator cuff tear," so difficulty and some discomfort lifting the left arm is not unreasonable.  (R. 260).

The ALJ addressed the medical evidence in her decision and found that it was not consistent with Plaintiff's claim that he is limited to occasional use of his hands.  The ALJ cited the March 24, 2016 physical therapy appointment where Plaintiff reported that "he sometimes had tingling in his hands but did not specify the frequency or severity of the tingling and there was not objective medical evidence to support any findings with his hands."  (R. 17 (citing Exhibit 1F/15-28)).  The ALJ also cited the April 6, 2016 appointment with Dr. Dukes where Plaintiff reported "some occasional numbness and tingling in his fingers but once again, there was not any objective medical evidence to support this."  *Id.*  The ALJ cited the February 20, 2017 medical note that reported Plaintiff's "physical disability did not affect his ability to work and he was self-reliant in his usual daily activities."  (R. 18 (citing Exhibit 2F/3)).  Accordingly, substantial evidence supports the ALJ's RFC determination as to Plaintiff's limitations using his hands.  Further, Plaintiff has not identified any significantly probative evidence the ALJ ignored or anything in the records to support a finding that he is limited to only occasional use of the hands.

An ALJ's hypothetical question to the VE must accurately reflect the "impairments and limitations that were borne out by the evidentiary record." *Newbold v. Colvin*, 718 F.3d 1257, 1268 (10th Cir. 2013) (internal quotation marks and brackets omitted); *Evans v.*

*Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (stating that the ALJ's hypothetical questions "must include all (and only) those impairments borne out by the evidentiary record"). As discussed *supra,* the ALJ's RFC determination is supported by substantial evidence and was included in the hypothetical question presented to the VE. Thus, there was no conflict for the ALJ to resolve, and she properly relied on the VE's testimony that an individual with Plaintiff's RFC could perform the representative occupations. Accordingly, the ALJ's findings at step five are supported by substantial evidence and contain no reversible error.

## V.     Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

SO ORDERED this 11th day of July, 2022.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge